OPINION OF THE COURT
Per Curiam.
Order entered June 29, 2001 reversed, with $10 costs, tenant’s motion denied, holdover petition reinstated, landlord’s cross motion for summary judgment on the petition is granted, and the matter remanded to Civil Court for further proceedings consistent with this decision.
The holdover summary proceeding stems from allegations that the stabilized tenant breached a substantial leasehold obligation by “consistently, chronically, and unjustifiably” failing to tender the preferential rent agreed upon by the parties when due, requiring the landlord to commence 12 nonpayment proceedings during the period between December 1997 and September 2000. We reject tenant’s assertion, advanced as the sole basis for his motion for summary judgment dismissing the petition, that the landlord’s election to forego serving a prepetition notice to cure is fatal to its possessory claim.
As this court recently stated in analogous circumstances, a landlord need not serve a notice to cure as a predicate to commencement of a holdover proceeding based upon chronic nonpayment of rent, because “the cumulative pattern of tenant [’s] course of conduct” is incapable of any meaningful cure (Adam’s Tower Ltd. Partnership v Richter, 186 Misc 2d 620, 622; see also, 3363 Sedgwick v Medina, 187 Misc 2d 421 [App Term, 1st Dept]). Our decision in Adam’s Tower to dispense with the empty formalism of a cure notice in this type of eviction proceeding is, as tenant now acknowledges in his appellate brief, consistent with a “long line of cases” reaching the same result (see, e.g., 974 Realty Corp. v Ledford, 9 Misc 2d 240; Ocean Farragut Assoc. v Sawyer, 119 Misc 2d 712; see also, National Shoes v Annex Camera & Elecs., 114 Misc 2d 751 [Saxe, J.]).
*331 Tenant has offered no sound basis for us to depart from our recent four-square holding in Adam’s Tower. Granted, a holdover proceeding based upon an alleged substantial lease violation generally will lie only after the tenant has failed to comply with a 10-day notice to cure (see, Rent Stabilization Code [9 NYCRR] § 2524.3 [a] [Code]). Strict adherence to the literal terms of the Code notice requirement is unwarranted in a chronic late payment holdover proceeding, however, since the past, persistent rent defaults which form the basis of the landlord’s claim cannot be remedied by a tenant’s “furnishing of assurances of future performance” (National Shoes v Annex Camera & Elecs., supra, 114 Misc 2d at 752) or, for that matter, by a tenant’s actual tender of any rent payment that may accrue during the 10-day, prepetition cure period specified by the Code.* To insist upon the service of a formal notice to cure in such circumstances is to compel the performance of a useless and futile act.
Nor do the notice provisions of paragraph 17 of the parties’ lease agreement require the dismissal of the within holdover petition. That section states, insofar as relevant, that in the event of a lease default by tenant “other than a default in the agreement to pay rent, Owner may serve [Tenant] with a written notice to stop or correct the specified default within 10 days. [Tenant] must then either stop or correct the default within 10 days, or, if [Tenant] need[s] more than 10 days, [Tenant] must begin to correct the default within 10 days and continue to do all that is necessary to correct the default as soon as possible.” Even assuming, in tenant’s favor, that paragraph 17, which by terms covers lease defaults other than those involving “the agreement to pay rent” was triggered by the recurring rent defaults that occurred here, the fact that the lease provides time for a cure “does not necessarily imply that a means or method to cure must exist in every case.” (Adam’s Tower Ltd. Partnership v Richter, supra at 622 [internal quotation marks omitted], quoting National Shoes v Annex Camera & Elees., supra at 752.) The due diligence provisions of paragraph 17, permitting the tenant to “begin to correct” a lease violation within 10 days and to “continue to do all that is necessary to correct the default as soon as possible,” clearly *332 were intended to cover the not uncommon situation in which a full cure of a correctable lease default is not feasible within 10 days — the removal of extensive alterations or a recalcitrant subtenant are two obvious examples. The lease provision cannot reasonably be read, however, to require the landlord to provide tenant with a prepetition cure opportunity of any duration where, as here, the alleged lease violation is not curable in the first instance.
Tenant’s reliance on Park Summit Realty Corp. v Frank (56 NY2d 1025, affg 84 AD2d 700, affg 107 Misc 2d 318) is misplaced. The landlord in that case sought possession of the tenant’s stabilized hotel unit not on the basis of past, repeated rent defaults, but upon the theory, flatly rejected, that a single rent default by the tenant served to automatically suspend tenant’s regulatory protections and that the resultant “month-to-month” tenancy was terminable at the landlord’s “absolute pleasure” (id., 107 Misc 2d at 320). Read in that context, the Court of Appeals’ one-sentence affirmance of the dismissal of the petition for lack of a notice to cure is hardly dispositive of the discrete notice issue now before us.
Turning to landlord’s cross motion for summary judgment (denied below as moot), the tenant’s breach of lease is firmly established in the record and, indeed, was conceded by tenant through counsel below. “A temporary financial embarrassment may excuse isolated instances of late payment, but inability to pay cannot excuse chronic and continuing delinquency.” (Adam’s Tower Ltd. Partnership v Richter, supra, 186 Misc 2d at 622.)
Finally, while adhering to the view that a demonstrated lease violation based upon a history of chronic rent defaults is not subject to a traditional postjudgment cure under RPAPL 753 (4) (see, Adam’s Tower Ltd. Partnership v Richter, supra at 622; Ocean Farragut Assoc. v Sawyer, supra at 715-716), we also recognize that there may exist circumstances warranting the issuance of a stay of a possessory judgment “upon such terms as may be just” (CPLR 2201) in order to avoid a leasehold forfeiture in this type of eviction proceeding. If conditioned upon appropriate terms, such as the tenant’s compliance with a prospective payment schedule, the grant of such a discretionary stay in a proper case, though providing no complete remedy for a tenant’s prior rent defaults, can serve both to prevent unwanted future rent defaults and to avoid an unnecessary eviction. While no bright-line standard can be formulated to determine when and under what circumstances such a stay *333 would be appropriate, factors to be considered include the length of the tenancy, the tenant’s payment history prior to the rent defaults complained of, the circumstances and severity of the rent defaults, and the tenant’s present financial status or other relevant indicia of creditworthiness. We remand the matter to Civil Court to allow a more complete inquiry in this case on these fact-laden issues.
This constitutes the decision and order of the court.
McCooe, J.P., Gangel-Jacob and Suarez, JJ., concur.

 Contrary to the motion court’s suggestion in footnote 4 of its written decision, the multiple, prior rent defaults involved herein cannot reasonably be equated with a lease violation founded upon a tenant’s unauthorized installation of a “washing machine” or other appliance, the removal of which is easily accomplished within 10 days.