OPINION OF THE COURT
Joel K. Asarch, J.
*731 Each year, tens of thousands of people find themselves homeless. Estimates in New York City indicate that over 100,000 people experience homelessness during the course of a year, a large percentage of whom have chronic mental illnesses.[1] In Nassau County, statistics from 1991 indicated that there existed 15,000 to 20,000 homeless individuals, of which 15% to 20% were mentally ill.[2] Ofttimes with the noblest of motives, organizations with the assistance of federal and state funding house formerly homeless individuals. Sometimes, as a condition of such housing, these organizations require that the resident participate in some form of treatment to enable them to function better in society. The issue which must be addressed in these two related cases is: may the provider evict the tenant based solely upon his or her failure to remain in treatment for the mental illness?
These two motions, concerning the same provider, were joined for the sole purpose of deciding these motions. (CPLR 602 [a].)

Matter of Denise B.

In this holdover proceeding, the petitioner sought possession of a residential apartment located in Hempstead, Nassau County, New York, and licensed to the respondent pursuant to a written agreement. The petitioner alleged that, as a person designated as eligible for subsidized housing, the respondent had to abide by enumerated restrictions of housing as a condition of this housing benefit. The subsidized housing license specifically required treatment attendance.[3] The license agreement, which the respondent signed, states, “I fully understand that my failure to abide by its terms will result in my immediate discharge from the program.” The agreement further stated that “[t]his agreement in no way creates a landlord/tenant relationship.”
This summary proceeding was commenced on or about December 9, 2002. The petition alleged that the respondent changed locks on her door to preclude the petitioner’s staff from *732 visiting the residence, that she had guests stay more than seven days, and that she failed to participate in all mental health, substance abuse or medical treatment as determined by petitioner’s professional staff. A written notice to quit was served upon the respondent on or about ¡November 7, 2002. The respondent appeared on the return date (Dec. 20, 2002) and entered into a stipulation of settlement signed by the petitioner’s counsel and the respondent. The agreement provided that the petitioner would receive a judgment of possession and warrant of eviction, execution of which would be stayed until April 1, 2003 — over three months later. The respondent agreed to use a case manager to assist her in locating alternative housing. The petitioner also agreed to assist the respondent. The court transcript of this settlement allocution indicated that the court inquired into the respondent’s appreciation of the stipulation’s contents and the consequences thereof. The undersigned was satisfied with respondent’s responses on that date and approved the stipulation of settlement. A judgment of possession and warrant of eviction were signed by the court on January 7, 2003. ,
The respondent did hot abide by the tjerms of the stipulation and did not vacate the premises by April 1, 2003. The respondent then obtained the services of Nassau/Suffolk Law Services, Inc. and through them brought the motion to vacate the stipulation, judgment of possession and warrant of eviction.
By order dated June 18, 2003, this court set this matter down for hearing to determine (a) if the respondent was capable of adequately defending her rights at the time the stipulation was entered into, and (b) what steps the respondent has taken to find other housing. (State of New York v Kama, 267 AD2d 224 [2d Dept 1999],) The prior order stated, [w]hile this Court was satisfied with the respondent’s responses during allocution on the December 20, 2002 stipulation, the undersigned recognizes that the respondent was an individual/client/patient deemed eligible for a housing subsidy solely due to mental condition/ impairment. The respondent’s alleged non-participation in mental health care and changing the locks might be perceived as aberrational behavior consistent with ¡the findings rendering respondent eligible for this hearing.”
Counsel for both parties worked hard and long in an attempt to reach a mutually satisfactory resolution of this matter without the necessity of such a hearing. However, such resolution by the parties themselves was not to be. As a result, on *733 October 1, 2003, counsel stipulated, that the “sole remaining issue for determination by the court is whether or not the judgment should be set aside because the stipulation on which it is based is invalid due to the respondent’s failure to recognize an alleged defense to the petition.” Counsel stipulated that there were no other issues to be determined by the court. A briefing schedule was agreed to and the matter was thereafter submitted for the court’s determination.

Matter of Diana C.

This holdover proceeding was commenced on or about September 22, 2003 by service of a notice of petition and petition upon the respondent. The petitioner seeks to recover possession of a residential apartment located in North Merrick, Nassau County, New York, and licensed to the respondent pursuant to an admission agreement dated March 28, 2003. This agreement, as with Denise B., provides that the respondent “will participate in all mental health, substance abuse and medical treatment as determined by all professional staff involved in [her] case. I understand that mental health treatment by a New York State Office of Mental Health licensed program is required. The level of treatment intervention and frequency of visits will be determined by the treatment provider.”
The petition contends that the respondent violated terms of the licensing agreement in that she failed to participate in treatment by all professional staff involved in her case and in having guests stay over for more than seven days. A written notice to quit was served upon the respondent and this holdover proceeding ensued.
The respondent answered the petition, raising as an affirmative defense that “the provision of supported housing cannot be conditioned upon participating in all mental health, substance abuse or medical treatment as determined by all professional staff involved in the licensee’s case.” The petitioner has moved for partial summary judgment dismissing this defense. The respondent seeks summary judgment dismissing the petition on the basis of this defense. However, no notice of cross motion was served. (CPLR 2215.) The court may, in searching the record, grant such judgment if appropriate to a nonmoving party. (CPLR 3212 [b].)
Discussion of the Law
It is often useful to take a step back and assess the ramifications of a particular case. Here, the consequences are potentially *734 huge. On the one hand, if the court finds that treatment may properly be made a condition precedent for licensing the residence, a refusal by the participant may i lead to homelessness— the very problem which the subsidized housing was created to combat. On the other hand, if the court finds that treatment cannot be a condition of supported housing, providers who want to do more than simply “warehouse” mentally ill individuals may stop participating in such programs. This discussion, however, is more properly left to the Legislature. The province of the court is to interpret the law, wherever the law may take the court.
This case does not concern the refusal by an individual of medical treatment. (See, e.g. Delio v Westchester County Med. Ctr., 129 AD2d 1 [2d Dept 1987].) Rather, it concerns an established program where the respondents were admitted based on their agreement to undergo treatment.
In 1993, an application was submitted to the United States Department of Housing and Urban Development (HUD) by the New York State Office of Mental Health, Bureau of Housing and Community Capital to participate in the Shelter Plus Care program. The petitioner herein was the sponsor agency. According to the application, the “program will provide housing through rental assistance while providing rehabilitation services to these persons . . . The Melillo Center will provide on-site rehabilitation services such as case management and daily living skills training to all program residents. In addition to these services provided directly through this grant, the Melillo Center will provide mental health and substance abuse services to residents through the appropriate component of the agency.” The OMH’s goal was to “address the need for comprehensive housing to serve this very vulnerable population. By providing ongoing support and rehabilitation services along with adequate housing we hope to interrupt the continuing cycle of homelessness that many mentally ill people find themselves in” (application for federal assistance filed by OMH,‘dated July 2, 1993, exhibit 1.1).
In its application, OMH further recognized that “[o]ften, mentally ill people withdraw from social contact or other support systems. This makes it vital for professionals to become involved on an ongoing basis to help clients identify and manage the symptoms of their illness.” (ld., exhibit 2.1.) The application stressed that “[b]y providing concerned professional staff to assist residents in accessing services we help ensure a *735 high probability that appropriate services are reached. Also important in this process is client choice. In all aspects of treatment residents will be encouraged, after being exposed to all available options, to choose the treatment programs most suited to their needs” (id., exhibit 4.2). In sum, the “goal of this program is to empower these residents to govern their own lives.” (Id.)
To qualify for rental assistance grants by HUD, the applicant had to certify that “it will provide or ensure the provision of supportive services . . . appropriate to the needs of the population being served and at least equal in value to the aggregate amount of rental assistance funded by HUD” (24 CFR 582.110 [a]). Both respondents are persons with disabilities (24 CFR 582.5) and participants under this program.
The Shelter Plus Care program was created pursuant to 42 USC §§ 11403-11407b, the Stewart B. McKinney Homeless Assistance Act (hereinafter referred to as the McKinney Act). The purpose of the act is “to provide rental housing assistance, in connection with supportive services funded from sources other than this part, to homeless persons with disabilities (primarily persons who are seriously mentally ill, have chronic problems with alcohol, drugs or both, or have acquired immunodeficiency syndrome and related diseases) and the families of such persons” (42 USC § 11403).
The goal of this act was to “link rental assistance to supportive services for hard-to-serve homeless persons with disabilities” (24 CFR 582.1 [a]). “The program provides grants to be used for rental assistance for permanent housing for homeless persons with disabilities.” (Id.) Here, both respondents are eligible persons qualifying for the Shelter Plus Care program. The goal of this program is to provide supportive services which address the special needs of the eligible persons and include mental health services and health care and “other services essential for achieving and maintaining independent living” (42 USC § 11403g [12] [B]). It is alleged that both individuals have violated the treatment requirements of the program and are not entitled to a continued license in the premises.
“If an eligible individual who receives assistance under this part violates program requirements, the recipient may terminate assistance in accordance with the process established pursuant to subsection (b) of this section” (42 USC § 11403f [a]). Here, the petitioner contends that the refusals by the respondents to participate in the program’s support services may render the *736 license revoked. 24 CFR 582.315 (b) provides that “the occupancy agreement may also include a provision requiring the participant to take part in the supportive services provided through the program as a condition of continued occupancy.” (See also 24 CFR 582.320.) The petitiorier contends that since the condition of continued treatment was breached, the eviction of the respondents may proceed.
The respondents contend that guidelines of the New York State Office of Mental Health do not require program attendance as a condition of housing. The respondents argue that under cases such as Matter of Lehman v Board of Educ. of City School Dist. of City of N.Y. (82 AD2d 832 [2d Dept 1981]), the more “protective of the mentally ill” guidelines should be given the effect of law. The respondents contend that the issue of participation has not been preempted by the McKinney Act.
The respondents point to OMH Supported Housing Program Implementation Guidelines dated April 1990. These guidelines recognized that in the mid-1970s New York responded to the needs of the severely mentally ill by establishing transitional group homes and apartments. The clients were required to attend service programs and were “expected to move as their rehabilitation progressed.” The Supported Housing Program implemented by OMH in the 1990s was intended to increase permanent housing options for the mentally ill and recipient-specific support services. The guidelines included “Principles to Guide Supported Housing Implementation,” among them separating housing from support services. This program envisioned using public capital funds and section 8 subsidies. A goal under Principle III (“Support, Maintenance and Rehabilitation Services”) indicates that there be “no program attendance requirements.”
The respondents’ arguments that guidelines and task force reports mandate that the respondents not be compelled to undergo treatment as a condition of continued residency must fail. Here, the very agency which created the guidelines applied for assistance to HUD in 1993 — after the April 1990 guidelines were enacted. The application is very specific in that the program being implemented was the Shelter Plus Care program. Under this program and the McKinney Act, treatment may be a condition of continued residency. The applicant (OMH) certified that “it will make available supportive Services appropriate to the needs of the population served” (¶ 7 of certifications). The aspirational language of the guidelines must take a back seat to *737 the specific language of the application and the requirements of the enabling statute and 24 CFR part 582.
It must be remembered that the respondents were granted a license to occupy the premises on condition that they undergo treatment. There is no specific treatment mandated; rather, the treatment is designed by professionals to assist the respondents in acclimating to society. This is not the situation where “[t]hose with psychiatric disorders would be dispossessed from their low-income accommodations to live in the streets” based on the tenants’ actions. (Gill v New York City Hous. Auth., 130 AD2d 256, 266 [1st Dept 1987].) This is not the situation where their actions vis-a-vis other tenants led to the eviction proceeding. Rather, the respondents agreed to participate in a specific federally subsidized program — and then failed to abide by the terms of their agreement.
It is this court’s opinion that the petitioner may require licensees to participate in treatment programs under the Shelter Plus Care program in which the respondents participate. As a result:
In the Denise B. matter, the court finds that the defense of treatment not being a condition of continued housing was illusory. Thus, the respondent has not shown good cause to vacate the stipulation of settlement. It is axiomatic that “ [stipulations of settlement are favored by the courts and not lightly cast aside” (Perrino v Bimasco, Inc., 234 AD2d 281, 281 [2d Dept 1996] ). There has been no showing of fraud, duress or similar inequitable conduct (Long v Fitzgerald, 240 AD2d 971 [3d Dept 1997] ), or a mutual mistake concerning the treatment condition. Neither does the court find that this agreement is void as against public policy. (See, e.g. Pecora v Cerillo, 207 AD2d 215 [2d Dept 1995].) As a result, the judgment of possession and warrant of eviction must stand.
The respondent has had over a year since the making of the stipulation to find other housing or to reach a settlement with the petitioner. Neither has occurred. The court further notes that Ms. B. spends a substantial amount of time away from the apartment. However, the court is mindful of the circumstances leading to the establishment by the petitioner of the Shelter Plus Care program. Under the unique facts of this case and in the exercise of judicial discretion pursuant to CPLR 2201 (see New York City Hous. Auth. v Torres, 61 AD2d 681 [1st Dept 1978]), the court will stay the execution of the warrant of eviction until April 30, 2004. If the respondent engages in continu *738 ous treatment as required by all of the petitioner’s professionals during this time period, the court will entertain an application to further extend the stay against enforcing the warrant. (See, e.g., Blalock v Amityville Senior Dev. Corp., NYLJ, Nov. 12, 1999, at 36, col 3 [ED NY].) The petitioner has indicated throughout this proceeding that its desire was to assist the respondent in becoming more self-sufficient through treatment— the very goals of the McKinney Act. Accordingly, the court will leave this option open to the respondent to consider. However, the court cannot say that this is not onp of the “most severe” cases wherein termination of the license ¡is appropriate.
Unless extended as aforesaid, effective May 1, 2004, all stays granted herein are vacated, and the eviction of the respondent may proceed.
In the matter of petitioner against Diana C., partial summary judgment is granted and the first affirmative defense that “the provision of supported housing cannot be conditioned upon participating in all mental health, substance abuse or medical treatment as determined by all professional staff involved in the licensee’s case” is dismissed.

. Coalition for the Homeless, May 2003.

. Nassau/Suffolk Coalition for the Homeless, taken from Shelter Plus Care application filed by Office of Mental Health (OMH) and dated July 2, 1993.

. The license agreement provided that the respondent must comply with the following requirement: “Participate in all mental health, substance abuse or medical treatment as determined by all professional staff involved in my case. I understand that mental health treatment by a licensed professional is required.”