Amalgamated Warbasse Houses, Inc. v Steven C. (2024 NY Slip Op 51358(U))

[*1]

Amalgamated Warbasse Houses, Inc. v Steven C.

2024 NY Slip Op 51358(U)

Decided on October 1, 2024

Civil Court of the City of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 1, 2024
Civil Court of the City of New York, Kings County

Amalgamated Warbasse Houses, Inc., Petitioner,

against
Steven C., Respondent.

Index No. LT-300526-22/KI

Law Offices of Scott D. Gross (Scott D. Gross, Esq.), for the petitioner
Brooklyn Legal Services (Coco Joly, Esq.), for the respondent

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc No.: 97-117.
PROCEDURAL POSTURE AND BACKGROUND
This is a nuisance holdover proceeding premised upon alleged dangerous hoarding conditions and foul and noxious odors emanating from the subject premises. Respondent lives alone in a cooperative apartment to which he succeeded after his mother's death. However, respondent has lived in the premises for "47 years, nearly [his] entire life." (NYSCEF Doc No. 98, Cohen affidavit ¶ 2.) It is not disputed that respondent has lived alone for approximate 5 years since his mother passed away. Respondent is the beneficiary of a CityFHEPS voucher which pays most if not all of his rent. (NYSCEF Doc No. 97, respondent's attorney's affirmation ¶ 4.)
The proceeding settled with a two-attorney stipulation executed on January 23, 2023, providing for a cure by March 31, 2023, and, if the apartment passed an inspection by petitioner on April 2, 2023, a probationary period of two years would follow. (NYSCEF Doc No. 14.) A possessory judgment entered and a warrant of eviction issued thereafter. Respondent did not timely cure, a marshal's notice was served, and respondent filed an order to show cause which was settled on April 17, 2023, with an agreement to stay execution of the warrant through May 17, 2023 for respondent to cure. (NYSCEF Doc No. 30.) Respondent breached the stipulation, leading respondent to file a second order to show cause to stay execution of the warrant. On June 22, 2023, the court issued a decision/order, staying execution through July 14, 2023 for respondent to both pay outstanding arrears and complete a deep cleaning of the subject premises. (NYSCEF Doc No. 46.) Respondent filed a third order to show cause on July 26, 2023, seeking a permanent stay of execution of the warrant, or in the alternative, a temporary stay of execution. On February 1, 2024, the court granted the order to show cause to the extent of staying execution through February 21, 2024, for respondent to provide access for an inspection. The warrant of eviction could execute after re-service of the marshal's notice if either respondent defaulted in granting access or if petitioner believed after inspection that respondent had not complied with the terms of the stipulation. (NYSCEF Doc No. 72.) Respondent filed a fourth order to show [*2]cause, which sought a permanent stay of execution of the warrant, or in the alternative, a temporary stay of execution. After holding an evidentiary hearing, the Honorable Remy Smith issued an order on June 20, 2024, denying the order to show cause.[FN1]
Based upon, inter alia, the credible testimony of the building's superintendent and two other tenants that the condition had not been cured, and discerning no "concrete plan to cure the nuisance and breach of lease," Judge Smith found that "[w]hile the premises may not be in the same condition that it was in at the time of the service of the termination notice (and no evidence was presented for determination as to same) . . . the conditions as per the most recent evidence thereof, to wit, February 21, 2024, constitute a nuisance and breach of the proprietary lease and the parties' January 23, 2023 stipulation." (NYSCEF Doc No. 95.)
Respondent has now filed a fifth order to show cause, once again seeking a permanent or temporary stay of the execution of the warrant based on further improvement to the condition of the apartment, and changed circumstances. (NYSCEF Doc No. 105, signed order to show cause [motion sequence 5].) On August 29, 2024, the court conducted a conference regarding respondent's order to show cause. The parties agreed at that time that — if the photographs presented by respondent were a true and accurate representation of the current condition of the premises  the primary remaining issue was the alleged foul odor. As odor cannot be determined from photographs, the court intended to conduct an inspection of the apartment and surrounding hallways on September 6, 2024. Unfortunately, the inspection was indefinitely canceled by a Unified Court System commanding court officer who informed the court on September 5, 2024, that judicial inspections would not be possible for some unspecified amount of time.
On September 25, 2024, the parties met in the courtroom and again could not resolve respondent's motion for a temporary or permanent stay. Respondent argues that the decision and order after the evidentiary hearing turned largely on the fact that there was no concrete plan in place to abate the nuisance or ensure that the condition would not recur. Respondent advances that this leaves the door open for this second motion for a permanent stay on the basis that a cure has now occurred, and that respondent is now in receipt of housekeeping services for eight hours a week which will ensure that the cure is maintained. Petitioner argues that respondent's motion should be denied without a hearing as respondent has previously claimed cure and benefitted from an evidentiary hearing at which he failed to demonstrate that a permanent stay was warranted. Petitioner characterizes this motion  made two and a half years after the first settlement, after two additional stays on consent, and a full evidentiary hearing — as yet another "bite at the apple."
DISCUSSION
Respondent cites to 326-330 E. 35th St. Assoc. v Sofizade, 2003 NY Slip Op 50962(U) (App Term, 1st Dept 2003), for the proposition that this court has the discretion under CPLR 2201 to stay execution of the warrant on terms that may be just. In Sofizade, the Appellate Term observed that, of particular note, was the trial court's factual determination that "the payment defaults 'are not likely to recur' based upon the tenant's improved financial circumstances." (Sofizade, 2003 NY Slip Op 50962(U), *1.) It is true that the court possesses broad discretion under CPLR 2201. It is also true that "no bright-line standard can be formulated to determine [*3]when and under what circumstances such a stay would be appropriate[.]" 326-330 E. 35th St. Assoc. v Sofizade, 191 Misc 2d 329, 333-334 [App Term, 1st Dept 2003].)
Here, the court is tasked with determining whether a permanent stay of the execution of the warrant is appropriate where there has been a significant improvement of the clutter conditions, and a disputed improvement of the odor that petitioner alleges continue to emanate from respondent's apartment. However, this is not a matter of chronic nonpayment of rent, which damages only the landlord financially. This is a matter of the quiet enjoyment and comfort of respondent's neighbors. Even so, the same equitable principles may apply based on the unique nature of respondent's disability.
In Melillo Ctr. for Mental Health v Denise B., 3 Misc 3d 730, 2004 NY Slip Op 24087 (Nassau Dist Ct 2004), also cited by respondent herein, the respondent was a licensee in a supportive housing facility who objected to participating in the treatment and counseling aspects of the program to which she had agreed upon admission. The facility sued to evict respondent for noncompliance with program requirements. The respondent entered into a stipulation pro se. Upon retaining counsel who moved to set aside the stipulation, the court found no basis to vacate the agreement, but stayed the execution of the warrant of eviction for two months on the condition that if "respondent engages in continuous treatment as required by all of the petitioner's professionals during this time period, the court will entertain an application to further extend the stay against enforcing the warrant." (Denise B., 2004 NY Slip Op 24087, *7.)
Also cited by respondent is 529 W. 29th LLC v Reyes, 63 Misc 3d 65, NY Slip Op 29115 (App Term, 1st Dept 2019), in which the Appellate Term found that the trial court did not abuse its discretion by allowing for a six-month probationary stay of the execution of the warrant, after trial, given that respondent, who was medically diagnosed with schizophrenia, was (1) taking ameliorative medication, (2) was "seen frequently by medical and social services providers" at an outpatient treatment program, and (3) no further nuisance incidents had occurred since the tenant had begun treatment. (Reyes, 2019 NY Slip Op 29115, *1.) Reyes is instructive, although respondent has had the benefit of numerous stays, unlike the six-month probationary stay granted after trial in Reyes.
Prospect Union Assocs. v DeJesus, 167 AD3d 540 (2d Dept 2018), cited by respondent, most closely supports respondent's request for a permanent stay of the execution of the warrant at this late juncture.[FN2]
In DeJesus, the Appellate Division remanded the proceeding to Housing [*4]Court for a determination as to whether a permanent stay is warranted. Citing to the See generally 42 USC § 3604, et seq, Fair Housing Act ("FHA"), the court reasoned, "The determination that tenants are incapable of keeping the apartment in a safe and clean condition going forward is a serious determination that was made without the benefit of a hearing and without a proper evaluation of whether the article 81 guardian's management of their personal (and property) affairs will now make a difference in their ability to stay in their home without harming others (emphasis added)." (DeJesus, 167 AD3d at 543.) Here, the court has already held a hearing. However, DeJesus recognizes that changes in circumstances may take time, and that a fair and reasoned approach based on a respondent's disabilities and equitable considerations are favored. (Id. at 543-544 ["We remand for a hearing to determine whether the accommodations proposed by the guardian are reasonable, whether they will curtail the risk of the nuisance recurring, and whether there should be a permanent stay of eviction."] [internal citation omitted].)
As demonstrated, supra, while the fact patterns and procedural posture of the proceedings differ, in recent years courts have become increasingly amenable to affording handicapped tenants protection under the Fair Housing Act in the form of a reasonable accommodation if necessary to maintain their tenancy and an equal opportunity to use and enjoy a dwelling. No specific diagnosis is required to entitle a tenant to protection under the FHA, and in fact a handicap may even be deduced from the "observations of a lay person." (See e.g. DeJesus, 167 AD3d at 543.) A property owner need not provide a reasonable accommodation if the tenant seeking such an accommodation "would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." (42 USC § 3604 ([f] [9].) 
In 1123 Realty, LLC v Treanor, 74 Misc 3d 131(A), 2022 NY Slip Op 50138(U) (App Term, 2d Dept 2022), the tenant faced eviction for hoarding conditions. The Appellate Term held it was not an improvident exercise of the lower court's discretion to permanently stay execution of the warrant of eviction, since "[t]he Civil Court found that it was due to [the tenant's] disabilities, and not any resistance or obstinacy on his part, that he had previously failed to cure the condition. Tenant also testified that he was currently cleaning on a daily basis, and if the maintenance he was doing was not enough, he would keep working on it and do anything necessary to stay in the apartment. Landlord did not present any evidence to the contrary." (Treanor, 2022 NY Slip Op 50138[U], *1-2.) Unlike here, the Treanor court had the benefit of being able to conduct a judicial inspection of Treanor's apartment. (Id., *1.)
There has been no objection to the term "hoarding" during in person conferences on the record with the court. The court regards respondent as suffering from some form of "hoarding disorder" which, as of 2013, is considered a DSM-5 diagnosis assigned to individuals who cannot bear to depart from any of their belongings which results in excessive clutter to an extent that impairs functioning and may create health and safety risks for the individual and others.[FN3]
, [FN4]
It [*5]is particularly resistant to treatment.[FN5]
"Hoarding is a complex, difficult-to-treat disorder that is associated with severe impairment, and patients are slow to show improvement."[FN6]
 "Cognitive behavioral therapy is the first treatment recommended for hoarding disorder."[FN7]
"Treatment can be difficult and lengthy and may require several approaches."[FN8]

On this record, the court cannot determine that a full cure has occurred. However, without more than what is stated in petitioner's affidavit, it cannot be said that respondent is a direct threat to the health or safety of others, or that he is damaging the property of others. As noted above, that the progress here has been slow and incremental is reasonably to be expected of an individual with hoarding disorder. That petitioner's affidavit is a canyon apart from the allegations in the notice to cure, and the evidence adduced at the evidentiary hearing, is testimony to further progress.
For instance, in opposition to respondent's motion for a permanent stay, petitioner affirms that the odor is "still bad" and that "while the condition of the apartment has been improved, there are rooms in the apartment which still have clutter. For example, with respect to the room where the Respondent has a 'Yankee Pennant' there is a pile of clothes on a bed. In addition, in another is a cabinet blocked a stand with a pile of clothes." (NYSCEF Doc No. 109, Levy affidavit ¶¶ 2-3.) However, in stark contrast, petitioner originally alleged that respondent was "storing recyclables and other debris" on the terrace and in the apartment; a roach infestation; impeded egress and ingress from debris; an inability to see the floors due to the extent of the clutter; and "foul and noxious odors emanating from the apartment." (NYSCEF Doc No. 1, petition at 4-5, ten day notice to cure.) Comparing the photographs provided with this motion [*6]with the photographs provided in the motion which precipitated the prior hearing, it is clear that respondent has made abundant progress. (NYSCEF Doc No. 100, respondent's exhibit A to motion sequence 5, photographs of apartment; NYSCEF Doc No. 77, respondent's exhibit B to motion sequence 4, photographs of apartment.) Moreover, petitioner's recent affidavit in opposition, describing the odor as "still bad," also stands in stark contrast to the affidavit in opposition to respondent's first order to show cause in which petitioner described the odor "being as if someone died. [] Our office conducted an [sic] wellness check and while the [r]espondent was alive, the smell was worse than ever." (NYSCEF Doc No. 28, Dugan affidavit ¶¶ 6-7.)
Through the admirable efforts of his attorney and social worker, respondent has recently secured housekeeping services for eight hours a week. However, to warrant a permanent stay of the execution of the warrant, the court must be satisfied that respondent's progress will continue, and that housekeeping assistance is a new and effective development. Accordingly, for the court to be satisfied that respondent is deserving of a permanent stay of the execution of the warrant, the court will temporarily stay execution of the warrant pursuant to CPLR 2201 until December 11, 2024 at 2:15 p.m. and until the determination of the hearing to be held at that time. The court fashions this remedy in the interests of substantial justice, and to enable respondent to demonstrate that he is able to maintain his home of 47 years in a habitable, uncluttered, and safe condition, as well as to demonstrate that he has taken additional steps to manage his behavior, including but not necessarily limited to, for example, seeking out regular cognitive behavioral therapy sessions with a licensed provider or something similar,[FN9]
or purchasing plug-in odor filters to be placed throughout respondent's apartment, and/or a stand-alone odor filter to be placed outside or immediately inside his door.[FN10]

CONCLUSION
Accordingly, it is
ORDERED that the execution of the warrant is stayed pursuant to CPLR 2201 and in the interests of substantial justice through and including the hearing and determination on respondent's order to show cause to be held on December 11, 2024 at 2:15 p.m. in Part R, Room 602 of the Kings County Housing Court.
In anticipation of the hearing, the parties must submit a stipulation of evidence pre-marking all of their evidences (reserving any objections), and a witness list. The parties should follow the format attached to this Decision/Order as Exhibit A. Should the parties have more exhibits than what is accounted for in Exhibit A, the parties may prepare a similar expansion using the format provided. Any evidences at that point stipulated to may be uploaded to NYSCEF, with appropriate redactions, and any evidences not consented to must be brought in triplicate. Neither party should upload exhibits to NYSCEF unless both parties have consented to the evidence. This submission must be made by December 4, 2024. If the parties are unable to [*7]reach an agreement as it relates to the evidences, the parties must upload an exhibit list to NYSCEF, pre-marking all evidences. Without such an agreement, the parties are not to upload their evidences and must bring them to court. If either party seeks to present media, the parties, themselves, are responsible for bringing a media player, USB drive, and HDMI cable. The court will not look at consider evidences on any phone.
This constitutes the decision and order of the Court.
Dated: October 1, 2024
Brooklyn, NY
Hon. Karen May Bacdayan
Judge, Housing Part
EXHIBIT A
CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: HOUSING PART R
_____________________________________________
AMALGAMATED WARBASSE HOUSES, INC.                                                                                   LT-300526-22/KI                                        Petitioner 
                                                                                   STIPULATION OF EVIDENCES
against
STEVEN C.                                        Respondent.
______________________________________________

 Petitioner's Exhibits

Description of Evidence (e.g. Email dated        5/15/2024; Picture of Broom)
 

Objection or No Objection

A

B

C

D

E

F

[*8]G

H

I

J

K

L

M

N

Respondent's Exhibits

Description of Evidence (e.g. Email dated         5/15/2024; Picture of Broom)
 

Objection or No Objection

1

2

3

4

5

6

7

8

9

10

11

12

13

14

Dated:            Brooklyn, New York
_____________________________________                  
__________________________________
Footnotes

Footnote 1:Respondent's attorney notes that Judge Smith did not rule on the second branch of the motion, to wit, a temporary stay.

Footnote 2:Dov Glick, Inc. v Cuevas, 17 Misc 3d 137(A), 2007 NY Slip Op 52332(U) (App Term, 2d Dept 2007), cited by respondent, is not apropos. In Cuevas, the Appellate Term reversed the trial court which had entered a final judgment of possession in favor of the landlord without affording the tenant an opportunity to cure pursuant to RPAPL 753(4). The proceeding was remanded to Housing Court for entry of a final judgment and opportunity to cure. We are well past the time permitted under RPAPL 753(4), which provides for a 30-day stay of the issuance of the warrant to allow for a cure of a breach of a substantial obligation of the tenancy. First, the warrant has issued; second, any entitlement to a stay under this provision has been subsumed by the passage of time. For similar reasons, 169 Realty LLC v Wolcott, 2003 NY Slip Op 51371(U) (App Term, 2d Dept 2003), is not helpful. In Wolcott, the Appellate Term affirmed the trial court for vacating a stipulation in which the tenant "unknowingly waived defenses and the opportunity to cure" pursuant to RPAPL 753 (4). (Wolcott, 2003 NY Slip Op 51371(U), *1.)

Footnote 3:Diagnostic and Statistical Manual of Mental Disorders 5th ed.

Footnote 4:Due to the sensitive nature of the subject matter herein, the caption of this proceeding will be redacted for purposes of publication pursuant to section 12.4 (f) of the Privacy Guidelines published on the Law Reporting Bureau website, available at 
https://www.nycourts.gov/reporter/privacy-guidelines.shtml, last accessed September 28, 2024.

Footnote 5:Andrew M. Miller, et al, Psychiatric Services, Pilot Study Evaluating Critical Time Intervention for Individuals With Hoarding Disorder at Risk for Eviction, vol 71, Apr. 1, 2020, pp 405-408. 

Footnote 6:Linda M. Richmond, Despite Addition to DSM, Few Treatments Emerge for Hoarding Disorder, PsychiatryOnline, Jan. 31, 2022, available at https://psychiatryonline.org/doi/10.1176/appi.pn.2022.1.18
(last accessed September 26, 2024).

Footnote 7:Mayo Clinic, Hoarding disorder, available at 
https://www.mayoclinic.org/diseases-conditions/hoarding-disorder/diagnosis-treatment/drc-20356062#:~:text=Treatment%20of%20hoarding%20disorder%20can%20be%20challenging%20but,true%20if%20the%20possessions%20or%20animals%20offer%20comfort (last visited September 26, 2024).

Footnote 8:Harvard Health Publishing, When Keeping Stuff Gets Out of Hand, Nov. 1, 2011, available at 
https://www.health.harvard.edu/mind-and-mood/when-keeping-stuff-gets-out-of-hand#:~:text=A%20lot%20depends%20on%20whether%20the%20hoarder%20wants,difficult%20and%20lengthy%20and%20may%20require%20several%20approaches (last visited September 26, 2024).

Footnote 9:See, e.g. Catholic Charities website, Hoarding Intervention & Treatment Program, 
https://www.ccmke.org/Catholic-Charities/Get-Help/Hoarding-InterventionTreatment-Program.htm

Footnote 10:These and similar odor-reducing/eliminating items are available on Amazon.com for a modest price. See Amazon search tool available at
 https://www.amazon.com, last accessed September 27, 2024.